## Case No. 3,368.

### CRAWFORD v. DEXTER et al.

[5 Sawy. 201.][1]

District Court, D. Nevada. July 9, 1878.

#### BOND—ALTERATION.

An alteration in the recitals of a bond, made after its execution, by the attorney of the obligee, without any wrongful or fraudulent purpose, which does not in any manner preju-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

dice the obligees or affect their rights or obligations, is immaterial, and will not destroy the bond.

Suit on a bond, the facts being as follows: Dexter being a sub-mail contractor under one Adam E. Smith, made a contract with John S. Ullrick, whose assignee in bankruptcy the plaintiff [Israel Crawford] is, and one H. C. Wright, whose interest was transferred to Ullrick before his bankruptcy, by which contract Dexter agreed to pay Ullrick and Wright eighteen hundred dollars per annum for carrying the mail once a week from Aurora, Nevada, to Independence, California, and back. To secure performance of this contract on Dexter's part, the bond in suit was given. The penalty of it is five thousand dollars, and the condition is in these words: "Whereas, the above bounden T. W. Dexter, has this day entered into a contract with said John S. Ullrick and H. C. Wright, whereby they agree to transport the United States mails from the town of Aurora, Nevada, to Independence, California, and back again, once in each week, commencing on the twentieth day of January, 1872, and ending on the thirtieth day of June, 1874, and for which the said T. W. Dexter has agreed to pay said John S. Ullrick and H. C. Wright the sum of eighteen hundred dollars per annum, payable quarterly, or as the same may be received from the United States, or" (here is a caret after the word "or," and an interlineation of the name "Adam E. Smith,") "by said T. W. Dexter." (Here is another caret, and on the margin of the bond a like mark, with the following clause: "And that said Dexter hereby agrees not to run any stage or conveyance for carrying passengers on said route between the town of Aurora and the town of Independence during the time specified in said contract.") "Now, therefore, the conditions of the above obligation are such that if the said T. W. Dexter shall well and truly pay to said John S. Ullrick and H. C. Wright all sums of money as they become due, according to the terms of said contract, reference to which is hereby made, then this obligation to be void, otherwise to remain in full force." The bond is signed by Dexter and the five sureties now defendants. The alterations above mentioned were made by Judge Boring, an attorney, upon the suggestion of Ullrick, one of the obligees. Ullrick suggested those changes when the bond was read over to him by the attorney, and before it had been signed; but it appears from the testimony of a number of the sureties, that the alterations were not in fact made until after the bond was executed, and that they were made without the consent or knowledge of the obligors. Ullrick's belief was and is now that the alterations were made by Judge Boring before signing, at the time he suggested them. These alterations were made without any wrongful or fraudulent purpose on the part of Ullrick. Judge Boring is admitted to have been a perfectly upright man,

but loose in his ways of doing business. Soon after the execution of the bond, the mail service between Aurora and Independence was increased to three times a week, and a new agreement was then made by Dexter to pay Ullrick and Wright so much more for each additional service per week as he had before agreed to pay for the service once a week. The contract was performed by Ullrick and his assignee. Suit is brought to recover on the bond two thousand six hundred and fifty dollars, that being the sum due Ullrick from Dexter for the tri-weekly service for the last quarter of 1873, and the first quarter of 1874. The amount to which he would have been entitled under the first contract for a weekly service is one third of that sum, or eight hundred and eighty-three dollars and thirty-three cents. Other facts are stated in the opinion.

Thomas H. Wells, for plaintiff.

M. A. Murphy and T. W. W. Davies, for defendants.

HILLYER, District Judge. On the argument, counsel for plaintiff admitted that the defendants are not liable on this bond for anything more than eight hundred and eighty-three dollars and thirty-three cents, the amount due from Dexter to Ullrick under the first agreement, for a weekly mail service at eighteen hundred dollars a year. The defendants resist any recovery against them upon two grounds, the first of which is, that at the time the tri-weekly service began there was a new agreement made to which the bond has no reference. The testimony, however, does not support this position. It appears from Ullrick's testimony that the compensation for carrying the mail two times more a week than he had at first contracted to do, was measured by the first agreement; and, as under the first agreement, Ullrick was to receive eighteen hundred dollars per year for one service per week, Dexter further agreed upon Ullrick's undertaking the tri-weekly service to pay him eighteen hundred dollars for each additional trip in excess of one a week. The new contract was not a substitute for the old, but a contract distinct from it, providing for a new mail service at a compensation measured by that provided in the first contract. The sureties, therefore, are not released by Dexter making the further agreement. The second ground is that the sureties are discharged from all liability by reason of the interlineations altering the bond after its execution. The substance of the rule on this point is stated in Smith v. U. S., 2 Wall. [69 U. S.] 219, as follows: "Any variation in the agreement to which the surety has subscribed, which is made without the surety's knowledge or consent, and which may prejudice him, or which may amount to a substitution of a new agreement for the one he subscribed, will discharge the surety." Because

he can then well say: "I came not into this contract." If, then, the alterations do not prejudice the defendants, and do not amount to a substitution of a new contract for the old one, the sureties are not thereby relieved from liability. An immaterial alteration, though made by the obligee himself, will not destroy the bond. Both of the alterations occur in the preamble or introductory part of the condition of the bond, in which is stated the terms of the agreement between Dexter, the principal, and Ullrick, the obligee, to secure the due performance of which on Dexter's part, the bond was given. The condition following this recital of the agreement is, that if Dexter "pays all sums of money as they may become due according to the terms of said contract," then the bond shall be void. Whatever the change in the recital of the agreement, the condition remained the same, and hence such change would be immaterial, unless it in some way affected the terms of the contract in respect to the time or manner of the payments to be made by Dexter to Ullrick.

But neither of the interlineations do so affect the contract. They do not in any manner change the rights, duties or obligations of any of the parties under the instrument. The name "Adam E. Smith," as interlined, may seem at first view to change the terms of the contract in respect to the persons from whom Dexter might receive the money. But when we know the situation of the parties when the agreement was made it does not do so. Adam E. Smith was the first or original contractor with the government, Dexter a subcontractor under him, and Ullrick under Dexter. The money to be received by Dexter was the money due from the government for the particular mail service undertaken by Ullrick. Until it came into his hands, whether directly from the United States, or through Adam E. Smith, or any other person whatsoever, neither he nor his sureties could become liable to Ullrick on the bond. Before the name Adam E. Smith was interlined, this recital read that Dexter had agreed to pay the money quarterly, "or as the same may be received from the United States or by said T. W. Dexter." This would include a receipt of the money directly from the United States or from any person, and by the condition the liability attached only when the particular money came into the hands of Dexter. Thus this alteration in no manner prejudiced the makers of the bond or changed the legal effect of that instrument.

The second alteration does not purport to be a recital of any portion of the agreement referred to in the condition of the bond and has no possible effect on the liability of the obligors. It is an independent covenant by Dexter not to put any opposition on Ullrick's mail route, and seems to be an afterthought of Ullrick's which was inserted in the bond by the attorney instead of in the agreement, where it properly belonged. At all events,

so long as the condition of the bond remained unchanged the insertion of this stipulation was immaterial. The condition of the bond refers only to the payment of the money as it fell due by the terms of the contract, and the obligors have no concern with any part of the agreement except that which fixes the time when the money must be paid by Dexter. Clearly no recovery could be had on this bond for any breach of Dexter's contract not to run any stage on the route of Ullrick. There must be judgment for plaintiff.