## WESTERVELT v. MOHRENSTECHER et al.

(Circuit Court of Appeals, Eighth Circuit. August 31, 1896.)

### No. 757.

1. NATIONAL BANKS—CASHIER—TERM OF OFFICE.

The office of cashier of a national bank is not an annual office, but the term of the incumbent continues until he resigns or until he is removed or a successor is appointed by the board of directors of the bank.

2. SAME—DURATION OF TERM.

Since the national bank act expressly provides that the cashier of a national bank shall hold his office subject to the pleasure of the board of directors, a by-law providing that a cashier shall hold his office for one year, and shall be elected annually, is nugatory, as is a reappointment in accordance with such by-law at the beginning of each year.

3. SAME—BOND—CONSTRUCTION.

A bond conditioned for the proper performance by a cashier of his duties "for and during all the time he shall hold the said office" binds the sureties for all such time, irrespective of the fact that he is reappointed at the beginning of each year.

4. SAME.

In an action on a cashier's bond for damages arising from breach thereof by his misappropriation of money and making of excessive loans, the fact that the bank and its receiver have sued and obtained judgment upon notes taken by the cashier for such misappropriated money and excessive loans is no defense.

In Error to the Circuit Court of the United States for the District of Nebraska.

O. A. Abbott and John W. Blee (Ralph W. Breckinridge was with them on the brief), for plaintiff in error.

C. C. Flansburg, S. L. Geisthardt, and W. H. Thompson, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This was an action upon the bond of the cashier of the Citizens' National Bank of Grand Island, Neb., brought by Edgar M. Westervelt, the receiver of that bank. The defendant in error George A. Mohrenstecher was the cashier, and the principal, and Mary Mohrenstecher, Otto A. Mohrenstecher, and William Stull were the sureties, on the bond. Judgment was rendered against the plaintiff below upon the pleadings, on the ground that the office of cashier of this bank was an annual office, and that the delinquencies charged in the petition occurred after the expiration of the year during which the bondsmen were liable. The facts material to the questions presented to this court, which were disclosed by the pleadings, are: The Citizens' National Bank of Grand Island, Neb., was a national banking association engaged in the business of banking from some time anterior to January, 1889, until on December 4, 1893, it suspended payment, and went into the hands of the plaintiff in error, who was appointed its receiver by the comptroller of the currency. The national bank act provides that such a banking association shall be a body corporate and shall have power:

"Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice-president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places. Sixth. To prescribe, by its board of directors, by-laws not inconsistent with law, regulating the manner in which its stock shall be transferred, its directors elected or appointed, its officers appointed, its property transferred, its general business conducted, and the privileges granted to it by law exercised and enjoyed." 13 Stat. c. 106, p. 101, § 8; Rev. St. U. S. § 5136, p. 993.

The articles of association of this bank provided:

"The board of directors shall have power * * * to elect or appoint a cashier and such other officers and clerks as may be required to transact the business of the association; to fix the salaries to be paid to them, and continue them in office or dismiss them, as in the opinion of a majority of the board the interests of the association may demand."

The by-laws of the association provided that the cashier of the bank should be elected at the first meeting of the board of directors in January of each year; that he should give a bond in the sum of $10,000, and should hold his office one year, and until his successor should be elected and qualified. One D. H. Vieths was appointed

cashier of this bank at the annual meeting of its board of directors in January, 1889, and resigned in May of that year. Thereupon the board of directors passed this resolution, "Resolved, that George A. Mohrenstecher be appointed cashier of this bank;" and Mohrenstecher entered upon the discharge of his duties as cashier, and continued to discharge them until the bank suspended on December 4, 1893. On August 13, 1889, the defendants in error delivered their bond in the sum of $10,000 to the bank, and the latter accepted it, and never thereafter took any other bond to secure the faithful discharge of the duties of this cashier. This bond contained no recital of the time or term for which Mohrenstecher was appointed, and no reference of any kind to his appointment, or to the time during which the obligors bound themselves to be responsible for his acts, except that which is contained in the following condition of the bond, viz.:

"The condition of the above obligation is such that whereas the above-bound Geo. A. Mohrenstecher has been appointed cashier of the Citizens' Nat'l Bank of Grand Island, Nebr., by reason whereof he will receive into his hands and have under his care and charge money, goods and chattels, and other things the property of said bank. Now. if the said Geo. A. Mohrenstecher for and during all the time he shall hold the said office of cashier of the said bank shall execute the duties thereof with integrity and fidelity and will faithfully perform and fulfill the trust thereby in him reposed, and well and truly, at all times when thereunto required, account for and render over to said bank all moneys, goods, chattels, and other things the property of said bank that may come into his hands, possession, or control, so that no default, fraud, or failure shall happen or be occasioned by any neglect or failure on his part to perform his duties as such cashier, then this obligation shall be void, otherwise it shall remain in full force and virtue."

On January 14, 1890, and at the first meeting of the board of directors in each January thereafter, that board passed a resolution in substantially this form:

"Resolved, that George A. Mohrenstecher be appointed cashier of this bank."

Subsequent to January 14, 1890, Mohrenstecher appropriated to his own use large amounts of money of the bank, under the pretense of loaning it to himself and others, whose promissory notes he took, payable to the bank, and placed among its assets. He also loaned money of the bank, in excess of the amounts permitted by the national bank act, to several persons, upon their promissory notes. By these unlawful acts of its cashier the bank lost $17,321.82. The bank or its receiver obtained judgments upon the various notes so taken in its name, but has been unable to collect the judgments. The defendant in error Mary Mohrenstecher was a married woman when she signed the bond.

Were the obligors on this bond liable for the defaults of the principal in it after January 14, 1890, under this state of facts? The contention of their counsel is that the office of cashier of this bank was an annual office, and that their liability was limited to the unexpired term of Vieths, for which Mohrenstecher was appointed in May, 1889. It is familiar law that, in cases where the term of office to which the principal is elected or appointed is fixed by law, the liability of his bondsmen will be limited to the current term, unless they expressly agree to continue liable after its expiration. Harris v. Babbitt, Fed. Cas. No. 6,114; U. S. v. Irving, 1 How. 250, 259;

U. S. v. Kirkpatrick, 9 Wheat. 720; Bank v. Hunt, 72 Mo. 597; County of Wapello v. Bigham, 10 Iowa, 39; Wardens of St. Saviour's v. Bostock, 2 Bos. & P. (N. R.) 175; Dover v. Twombly, 42 N. H. 59; Welch v. Seymour, 28 Conn. 387; County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181; Enterprise Co. v. Allen, 67 Cal. 505, 8 Pac. 59; Bigelow v. Bridge, 8 Mass. 274; Chelmsford Co. v. Demarest, 7 Gray, 1; Hassell v. Long, 2 Maule & S. 363; Peppin v. Cooper, 2 Barn. & Ald. 431; Leadley v. Evans, 2 Bing. 32; State Treasurer v. Mann, 34 Vt. 371; Insurance Co. v. Clark, 33 Barb. 196. It is equally well settled that, where the bond recites the length of the term for which the officer is elected or appointed, the liability of the bondsmen is presumed to be limited to that term, in the absence of an express agreement to be responsible for a longer time. Arlington v. Mericke, 2 Saund. 411; Waterworks Co. v. Atkinson, 6 East, 507; Association v. Lemke, 40 Kan. 661, 664, 20 Pac. 512. But a bond for the fidelity of one who holds his office during the pleasure of the appointing power covers all delinquencies until he resigns or is removed. Bank v. Rogers, 7 N. H. 21, 23. No one denies that the law favors sureties, that doubts of the extent of their liability are to be resolved in their favor, and that the burden of proof is upon the obligee to establish their liability upon their bond. But, after all is said, a bond is nothing but a contract. It is the written evidence of the meeting of the minds of the parties to it, and, subject to the rules favoring sureties to which we have referred, it must be construed by the established canons for the interpretation of contracts. The rule for the construction of contracts which prevails over all others is that the court may put itself in the place of the contracting parties; may consider, in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, what they intended by the terms of their contract, and when their intention is manifest it must control in the interpretation of the instrument, regardless of inapt expressions, or more technical rules of construction. Accumulator Co. v. Dubuque St. Ry. Co., 27 U. S. App. 364, 372, 12 C. C. A. 37, 41, 42, and 64 Fed. 70, 74. Let us apply this salutary rule to the bond in this case. The act of congress under which this bank was organized provided that its board of directors might appoint a cashier, require bonds of him, and fix the penalty thereof, and dismiss him at pleasure, and appoint another to fill his place. Its articles of association provided that the board might appoint a cashier, fix his salary, and continue him in office, or dismiss him, as in the opinion of a majority of the board the interests of the association might require. It is plain that, in the absence of any other regulations, a cashier once appointed under this act of congress and these articles of association would hold his office until he resigned, or until the board of directors of the bank dismissed him. A subsequent appointment of the same man to the same office would have no more effect upon him, or upon the term of his office, than a second deed of the same property by one who had already conveyed it to the same grantee would have. The only act of the board of directors that could effect the tenure of his office, under the act of congress, would be his dismissal.

It is, however, contended that the by-laws (which provided that the cashier should be elected at the annual meeting in January in each year, should give a bond in the sum of $10,000, and should hold his office for one year, and until his successor was elected and qualified) made this an annual office, and limited the term of the office of this cashier to the unexpired portion of the year for which his predecessor, Vieths, was elected. But how could the by-laws of this bank repeal or modify the act of congress and the articles of association under which they were enacted? The act of congress expressly fixed the tenure of office of the cashier of this bank. It expressly provided that the board of directors might dismiss the cashier and certain other officers "or any of them at pleasure and appoint others to fill their places." It provided that this cashier should always hold his office subject to instantaneous removal at the pleasure of the board of directors. Nor is it at all probable that this provision of the national bank act was inserted without purpose or consideration. Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys. When it has once been secured, and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows. It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or a president of a bank, spreads through the community in which he lives, scares the depositors, and threatens immediate financial ruin to the institution. In such a case it is necessary to the prosperity and success—to the very existence—of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence. In our opinion, the provision of the act of congress to which we have referred was inserted, ex industria, to provide for this very contingency. In any event, it is there, and it clearly provides that the cashier of a national bank may be dismissed at the pleasure of the board of directors, and that it may appoint, not the same man again, but another in his place. National banks are the creatures of the act of congress. Under familiar principles, they have no powers beyond those expressly granted, and those fairly incidental thereto. The Omaha Bridge Cases, 10 U. S. App. 98, 174, 2 C. C. A. 174, and 51 Fed. 309; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 2 C. C. A. 174, 230, 51 Fed. 309, 316. It follows from this principle that, since the act of congress expressly provides that the cashiers of national banks should hold their offices subject to the pleasure of the board of directors, neither the bank nor its board can make time contracts or appointments in violation of that provision. Harrington v. Bank, 1 Thomp. & C. 361; Boone, Banking, § 353; Ball, Banks, 65. What, then, is the effect of these established rules upon the by-laws of this bank? It is that that part of these by-laws which provides

that the cashier shall hold his office for one year, and that he shall be elected annually, must fall, and the cashier of the bank must hold his office under the act of congress, subject to immediate removal at the pleasure of the board of directors, until he resigns or is removed.

It is argued that the fact that this cashier was again appointed in January of each year converted his term of office from a continuous term, at the will of the board of directors, into annual terms. If the board of this bank had passed daily resolutions appointing him cashier, would those resolutions have made his term of office daily? The fact is that he would have continued in office exactly as he did, if none of the resolutions or appointments subsequent to May, 1889, had ever been passed or made by the board of directors. His first appointment was, under the act of congress, to an unlimited term,— to a term that could be ended by the bank only by his dismissal by its board of directors. That board never did dismiss him. It never did appoint another to take his place. How subsequent resolutions of appointment could affect the term of his office, which was fixed by this act of congress, it is difficult to understand. It seems clear that his appointment to an office which he already held, and would continue to hold without further appointments, could not be more than the manifestation of an intention on the part of the board of directors that he should continue to hold his position. 1 Morse, Banks, § 27, p. 80; Bank v. Root, 2 Metc. (Mass.) 522, 539; Bank v. Chickering, 3 Pick. 335, 340. Now, let us place ourselves in the situation of the parties when this bond was made, and see if its expression of their intention is doubtful. Mohrenstecher had been appointed cashier of this bank in May, 1889. On August 13th in that year, three months after he was appointed, and four months before the annual election of cashier, according to these by-laws, Mohrenstecher and his sureties gave a bond to this bank, in which they recited his appointment, and agreed to pay the penalty of the bond unless "the said Geo. A. Mohrenstecher, for and during all the time he shall hold the said office of cashier of the said bank, shall execute the duties thereof with integrity and fidelity," etc. It must be conceded that the obligors in this bond had the right and the power to agree to indemnify the bank against any defaults of Mohrenstecher, as its cashier, during the time subsequent, as well as during the time antecedent, to January 14, 1890, when they claim that their liability ceased. They certainly could, by apt words, have expressed their intention to limit their liability for him to the time antecedent to that date. They certainly might, by suitable expressions, have declared their intention to be liable for him both before and after that date. Which did they do in this bond? Is an agreement to indemnify "during all the time he shall continue to hold the office of cashier" an expression of an intention to indemnify for the first four months of the time he should continue to hold that office, or for all the time he should continue to hold it? This is the real question here, and it seems to us to be susceptible of but one answer. No apter or more suitable words than those used in this bond occur to us to express an intention on the part of these obligors to continue to be liable as long as Mohrenstecher should continue to hold this office, and we are unwilling to hold that the

English language is incapable of giving expression to that idea. After a thoughtful and deliberate consideration of the plain words of this bond, and of the facts and circumstances surrounding these parties when it was made, all doubt of its meaning, and of the intention of the parties to it when it was executed, has disappeared from our minds; and the conclusion has been irresistibly forced upon us that these obligors intended to agree, and did agree, to indemnify the bank for the defaults of Mohrenstecher until he ceased to be its cashier.

The fact that the bank or its receiver has sued and obtained judgments upon the promissory notes which this cashier took for misappropriated money of the bank and for excess loans is no defense to this action. This is not an action to rescind any contract and recover back the consideration thereof. It is an action for damages for breach of the conditions of this bond. The obligation of the bond is to pay any loss or damage which the bank sustained by the failure of this cashier to faithfully fulfill and perform the trust reposed in him, and to comply with the other conditions expressed therein. Neither the bank nor the receiver is required to repudiate his transactions, or restore the consideration it has received from them, in order to maintain this action. There is no inconsistency between an action upon the notes he wrongfully took, and a recovery of all that the makers can pay upon judgments thereon, and an action upon this bond for the losses sustained by the breach of its conditions. The bank and the receiver may take every benefit they can derive from the acts of this cashier, use every just endeavor to collect every note he has obtained in the name of the bank, and at the same time may press this action on the bond for the damages caused by the breach of its conditions. Of course, the bank and the receiver can have but one payment and satisfaction of the debts owing upon the notes the cashier took, and when they are paid in full that payment will constitute a defense to this action, but until then both remedies may be pursued. Vulcanite Co. v. Caduc, 144 Mass. 85, 10 N. E. 483; Bank v. Birch, 130 N. Y. 221, 29 N. E. 127; Emery v. Baltz, 94 N. Y. 408; White v. Smith, 33 Pa. St. 186.

Whether or not this bond was signed or based upon the faith and credit of the married woman, Mary Mohrenstecher, or made with reference to her separate estate, is a disputed question, under these pleadings, which does not appear to have been considered by the court below. For that reason, and because this judgment cannot be sustained in favor of the other defendants in error in any event, we will not enter upon its consideration until it has been decided by the circuit court. The judgment below must be reversed, with costs, and the case remanded to the court below, with directions to proceed to its trial.