## In re PARAMOUNT PUBLIX CORPORATION.

### Claim of KATZ.

District Court, S. D. New York.
June 15, 1936.

Root, Clark, Buckner & Ballantine, of New York City (Cloyd Laporte and Samuel S. Isseks, both of New York City, of counsel), for Paramount Pictures, Inc., successor to trustees of debtor.

Samuel Spring, of New York City (Charles E. Hughes, Jr., of New York City,

466

and F. W. R. Pride, of New York City, of counsel), for claimant.

Cadwalader, Wickersham & Taft, of New York City, and James B. Benedict, of Cincinnati, Ohio (Walbridge S. Taft, Jacquelin A. Swords and Whitman Knapp, all of New York City, of counsel), for Hulbert Taft, amicus curiæ.

Riegelman, Hess & Hirsch, of New York City (Cannon, Speith, Taggart, Spring & Annat, and Paul H. Keough, all of Cleveland, Ohio, of counsel), for Theodore De Witt, Receiver of Hotel Hollenden Co., amicus curiæ.

COXE, District Judge.

These are exceptions by the claimant to a. report of a special master recommending the disallowance of the claim of Sam Katz against the debtor for $265,498.18, with interest.

The claim is for damages for alleged wrongful discharge under a contract of employment, dated January 1, 1932, between the claimant and the debtor, a New York corporation, for a term of three years; and the single question presented is whether section 60 of the New York Stock Corporation Law (Consol.Laws N.Y. c. 59) authorized the removal of the claimant at any time without subjecting the debtor to liability for damages for breach of contract. The special master held that it did, and recommended that the claim be expunged; and the exceptions challenge the correctness of the ruling in that respect.

The contract on which the claim is based obligated the claimant to serve the debtor for a period of three years; it specified that the claimant should perform such duties as might be assigned to him by the board of directors or the executive committee of the debtor, provided they were of a dignity substantially equivalent to the claimant's duties under his then existing contract; and it stipulated that the claimant should receive a weekly salary of $2,500, together with options to purchase semiannually, during the life of the contract, stock of the debtor at varying prices. The contract was authorized by the board of directors of the debtor, and ratified by the stockholders at a meeting called for the purpose.

Under the earlier contract referred to, the claimant was to manage the debtor's theatre department, act as president of Publix Theatres Corporation, a wholly owned subsidiary, and serve in such other offices of the debtor and its subsidiaries as the board of directors might determine. Prior to and during the period of the present contract, the claimant was a vice president, a director, and a member of the executive committee of the debtor, and was the head of its theatre department. He was also the president and a director of Publix Theatres Corporation.

■ Section 60 of the New York Stock Corporation Law reads: "§ 60. Officers. The directors of a stock corporation may appoint or elect from their number a president, and may appoint or elect one or more vice-presidents, a secretary, a treasurer,. and other officers, agents and employees, who shall respectively have such powers and perform such duties in the management of the property and affairs of the corporation, subject to the control of the directors, as may be prescribed by them or in the by-laws. The directors may require any such officer, agent or employee to give security for the faithful performance of his duties, and may remove him at pleasure."

It is the contention of the trustees that the power of removal conferred by this section may be exercised without incurring liability for damages. The argument is that similar language of the National Banking Act (U.S. Revised Statutes, § 5136; U.S. C.A. title 12, § 24) has been uniformly held to have that effect. Westervelt v. Mohrenstecher (C.C.A.) 76 F. 118, 34 L.R.A. 477; Rankin v. Tygard (C.C.A.) 198 F. 795; Copeland v. Melrose Nat. Bank, 229 App. Div. 311, 241 N.Y.S. 429, affirmed without opinion, 254 N.Y. 632, 173 N.E. 898. This section provides that a national bank shall have power: "Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places."

It is insisted that, in the absence of an authoritative ruling to the contrary by the New York Court of Appeals, these decisions interpreting the National Banking Act should be followed in the construction of section 60.

There has been substantially no change in section 60 since it was first enacted in 1890 (N.Y.Laws 1890, c. 564, § 27). Yet, during the period of over forty-five years that the section has been in existence, the question now presented has never been directly raised or squarely passed on by the

New York Court of Appeals. In that court, it seems to have been assumed that corporate employment contracts for fixed terms were valid and enforceable. Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Hollwedel v. Duffy-Mott Co., 263 N.Y. 95, 188 N.E. 266, 90 A.L.R. 1312; Arentz v. Morse Dry Dock & Repair Co., 249 N.Y. 439, 164 N.E. 342, 62 A.L.R. 231; Peck v. Dexter Sulphite Pulp & Paper Co., 164 N.Y. 127, 58 N.E. 6. This is reasonably clear from a dictum of Chief Judge Pound in Heaman v. E. N. Rowell Co., supra, 261 N.Y. 229, at page 231, 185 N.E. 83, 84, as follows: "That a contract for employment for life if authorized by the corporation and based on an adequate consideration, will ordinarily be sustained admits of no dispute." In the lower New York courts, the question has only once been discussed, and this merely in a dissenting opinion in the Appellate Division. Usher v. New York Central & H. R. R. Co., 76 App.Div. 422, 78 N.Y.S. 508, affirmed 179 N.Y. 544, 71 N.E. 1141. Recently the point has again been mentioned, without discussion, in another dissenting opinion in the Appellate Division in Abbott v. Stern Bros., 248 App.Div. 161, 288 N.Y.S. 394, decided May 29, 1936. These decisions of the New York courts show an unmistakable trend against the contention of the trustees, but they are not sufficiently authoritative to settle the construction of section 60 for the present purpose. Carroll v. Carroll, 16 How.(57 U.S.) 275, 14 L.Ed. 936; Irving Nat. Bank v. Law (C.C.A.) 9 F.(2d) 536, reversed on other grounds on rehearing (C.C.A.) 10 F.(2d) 721.

The power of a New York corporation to make an employment contract is derived from section 14 (4) of the General Corporation Law (Consol.Laws N.Y. c. 23), which grants to all corporations the power "to appoint such officers and agents as its business shall require, and to fix their compensation." Section 60 was not intended to limit or affect the power of a stock corporation to enter into a contract of that character; it concerns mainly the delegation to officers, agents, and employees of corporate powers relating to the "management of the property and affairs of the corporation"; and it provides that these powers may be withdrawn or terminated at any time by the directors. If a stock corporation wishes to hire an employee for a fixed term, it may do so under section 14 (4) of the General Corporation Law. If then it decides to give such employee management powers, it may do so under section 60; if, later, it determines to strip him of these powers, section 60 provides the necessary authority. I do not think, though, that section 60, in authorizing the withdrawal from an employee of corporate powers, permits the directors completely to obliterate a contract obligation entered into by the corporation under section 14 (4) of the General Corporation Law.

It is said for the trustees that the grant of power to remove carries with it the right to exercise the power without penalty. There is, however, a clear distinction between the right to terminate a contract and the right to deprive an officer or employee of corporate powers which have theretofore been given to him. Cuppy v. Stollwerck Bros., 216 N.Y. 591, 111 N.E. 249; Fells v. Katz, 256 N.Y. 67, 175 N.E. 516. And without some specific statutory authority to terminate, I do not believe that any such right as contended for by the trustees existed.

The similarity between section 60 and the section of the National Banking Act is largely superficial. In the first place, the National Banking Act confers no express power to appoint officers and agents, and fix their compensation, such as found in section 14 (4) of the General Corporation Law. Then, too, the same reasons of public policy which condemn employment contracts in so far as national banks are concerned, Westervelt v. Mohrenstecher (C.C.A.) 76 F. 118, 122, 34 L.R.A. 477, do not exist with respect to business corporations.

I find it extremely difficult, also, to harmonize section 98 of the New York Insurance Law (Consol.Laws N.Y. c. 28) with section 60, except on the theory that the Legislature did not intend that section 60 should bar corporate contracts of employment. Section 98 of the New York Insurance Law was adopted in 1892 (Laws 1892, c. 690, § 89), two years after the enactment of the predecessor of section 60, and applies to domestic life insurance companies; it provides as follows: "No such life insurance corporation shall make any agreement with any of its officers, trustees or salaried employees whereby it agrees that for any services rendered or to be rendered he shall receive any salary, compensation or emolument that will extend beyond a period of twelve months from the date of such agreement." Section 60 is applicable to life insurance companies which are also stock corporations (Stock Corporation Law, § 2); and although section 98 covers both mutual and stock life insurance companies, it is not easy to see

why, if section 60 did condemn all employment contracts for fixed terms, it should have been necessary for the Legislature in 1906 to restrict any such contract to a limited period of twelve months. Furthermore, section 98 assumes that a stock life insurance company already had power to make such an employment contract, for there is nothing in the legislative language used to suggest that the Legislature was granting such a power, or considered it necessary to do so, but rather that it was cutting down a power which already existed.

I hold, therefore, that section 60 did not authorize the removal of the claimant without subjecting the debtor to liability for damages for breach of contract; and it follows that the claimant's exceptions to the report of the special master are sustained.