The WALDEN NATIONAL BANK, Respondent, *v.* CALEB BIRCH et al., Appellants.

Inasmuch as no penalty is imposed either upon the bank or the borrower by the National Banking Act (U. S. R. S. § 5201) for a violation of the provision thereof prohibiting a national bank from making any loan or discount on the security of the shares of its own capital stock, except as specified, such violation may not be urged against the validity of the transaction by anyone except the government; at least, unless the objection was raised before the contract was executed or while the security was in the hands of the bank.

In an action upon a bond given by one R. to plaintiff, a national bank, conditioned for the faithful performance by R. of his duties as plaintiff's cashier, these facts appeared: One T., who owned certain shares of plaintiff's stock and who was indebted to it, desiring to have his notes

discounted to apply upon such indebtedness, under an arrangement made with R., as cashier, and for the purpose of securing the notes, and to avoid said prohibition, assigned his stock to R. individually, and the same was transferred to the latter on the books of the bank. The notes were thereupon indorsed by R., discounted by plaintiff and the proceeds applied in payment of T.'s indebtedness. The certificates of the stock were thereafter held by the bank, the dividends thereon being applied to pay the interest on the notes. Subsequently R. assigned the certificates to other banks as collateral security for loans made to him, which not having been paid, the collaterals were sold and R.'s indebtedness paid out of the proceeds. The notes so discounted by plaintiff were not paid. *Held*, that conceding the transaction was in violation of the said act, defendants could not avail themselves thereof as a defense; that R. took and held the stock in trust for the bank, and it was the equitable owner thereof, subject to the right of T. to redeem it; and that the transfer thereof by R. was a violation of his duty, and so, a breach of the condition of the bond.

The bank brought action and recovered judgment on the notes against R., as indorser. *Held*, that this was not a waiver of the right to sue him in tort for the misappropriation, and so, was not a waiver of the right to sue the sureties for the damages caused thereby; that the two remedies were not inconsistent, but concurrent.

(Argued October 26, 1891; decided December 1, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to recover from the defendants, as sureties of one Rutherford, cashier of the plaintiff's bank, the value of certain of its securities alleged to have been converted by him.

The trial court found the following facts: Said Rutherford was cashier of the plaintiff, a national bank, from its organization until March 19, 1887, except during a few months in the year 1886, when he was ill. The bond in question, dated February 2, 1887, is in the penalty of $4,000, and contains the condition that if said Rutherford, " honestly and in good faith, performs all the duties of cashier in the Walden National Bank and all the duties in any manner incident thereto while

acting as such cashier, and also all such duties, acts and work as may be required of the said William G. Rutherford by the said bank or its board of directors, which shall from time to time be assented to on his part, and in all respects conduct honestly and in good faith toward or in respect to said bank, its moneys and securities and the moneys and securities of any other person or persons left in any manner with said bank, then the above obligation to be void, otherwise to remain in full force and virtue." Prior to December 12, 1882, one Terbell owned thirty shares of the stock of said bank of the par value of $100 per share, and on that day he assigned and delivered the same to said Rutherford, in his "individual name," and thereupon it was transferred to him on the books of the bank, and three new certificates for ten shares each were issued to him therefor. At this time Terbell was indebted to the bank to an amount exceeding $9,000 upon certain notes made or indorsed by him and discounted by the plaintiff for his benefit. He was not indebted to said Rutherford, but was in financial difficulties and wanted to secure the bank. Said stock was thus transferred to Rutherford upon the understanding "that it was to be held for the bank as collateral security for the payment of" said notes. The transfer "took place over the counter of the bank while said Rutherford was acting as its cashier, and the transaction was with him in that capacity." Said Terbell "understood he was dealing with the bank and not Rutherford personally, and the only reason given at any time for assigning the stock to Rutherford instead of the bank was, as Rutherford told Terbell, because the Banking Act prohibited the bank from making loans upon the security of its own stock." "Said cashier, after the transfer aforesaid, put said stock in an envelope and informed the president of the bank that it belonged to Terbell, and the bank thereafter held such stock as security for Terbell's paper, although it held it in Rutherford's name." December 20, 1883, Terbell made his note for $1,000, and April 1, 1884, another for the same amount, each payable to the order of Rutherford and indorsed by him, and the plaintiff discounted both for said Terbell, and

at the time " held said bank stock as security for the payment " thereof, under the aforesaid agreement. The indorsements of Rutherford " were in form only, and was only done to make the transaction appear regular under the National Banking Laws." The note dated April 1, 1884, was given to take up a note made by Terbell and held by the plaintiff on December 12, 1882, or in renewal of a note given for that purpose. September 1, 1886, at the request of Terbell and the plaintiff, Rutherford sold ten shares of said stock to the defendant Snyder for $1,210, which was applied on the indebtedness of Terbell to the bank, except a small sum, which was placed to his credit on the books. Up to this time the dividends upon the stock had been credited to Terbell, and after this sale the dividends upon the twenty shares remaining were equal to the interest on said two notes, and " they were balanced in that way by the cashier, said Rutherford."

January 13, 1887, Rutherford borrowed $1,000, upon his own note and for his own use, from the Goshen National Bank, to which he gave as collateral security ten shares of said stock. The note was not paid, and the bank last named sold said collateral and with the proceeds paid the note. March 18, 1887, Rutherford borrowed another $1,000 upon his own note and for his own use, from the Chase National Bank, and assigned to it the remaining ten shares of said stock as collateral. That note was not paid, and that bank sold its collateral and paid its note out of the proceeds.

Neither of the notes so held by the plaintiff was ever paid, although payment was duly demanded, and no part of said twenty shares of stock was ever returned to the plaintiff, notwithstanding due demand made of said Rutherford.

September 10, 1887, the plaintiff recovered judgment on its notes against Terbell and Rutherford, but no part thereof having been paid, an offer was made to the defendants to assign the same to them, " but they declined to do anything about the matter."

Upon the request of the defendants the court also found that the notes made or indorsed by Terbell and held by the

plaintiff on December 12, 1882, with two or three unimportant exceptions, had upon them the name of a responsible maker or indorser in addition to that of Terbell.

The trial judge refused to find upon the like request that "the transfer of said stock by said Terbell was made to said Rutherford, and held by him in his individual capacity as a personal matter, and he did not take and hold the stock as cashier for the plaintiff and as collateral security to the indebtedness to and for said bank," and after so refusing, added : "Rutherford was not liable as an indorser, though one in form." The defendants excepted generally, but did not except specifically to the addition as found.

After finding these facts, the trial court found as conclusions of law that the transaction was not prohibited by the National Banking Act, and if it was, that the defendants could not take advantage of it in this action ; that Rutherford was not liable to the bank as indorser on said notes, and that the recovery of said judgment does not help the defendants, because the rule as to election of remedies does not apply ; that the defendants were not liable for the stock given to the Goshen Bank on the 13th of January, 1887, because they were not then the sureties of said Rutherford, but that they were liable for the value of the other ten shares delivered to the Chase Bank March 18, 1887, as that was after they had signed said bond.

Rutherford died in March, 1888, and this action was commenced about two months afterward.

*A. S. Cassedy* for appellants. Rutherford indorsed the notes in question as an individual, became personally liable to the bank, and held the stock to secure his indorsements. The bank's acts are in harmony with such position, and his sureties are not liable. ( *Wheelock* v. *Cost,* 77 N. Y. 296 ; *Magruder* v. *Colston,* 44 Md. 349 ; *Hale* v. *Walker,* 31 Iowa, 344 ; *Dedham Bank* v. *Chickering,* 4 Pick. 314 ; Brandt on Suretyship, 314 ; *Miller* v. *Stewart,* 9 Wheat. 680 ; *In re B. H. M. Co.,* 2 Pick. 223 ; *People* v. *Pennock,* 60 N. Y. 421 ;

*McClusky* v. *Cromwell*, 11 id. 590.) The transaction if as claimed by the bank and found by the court, was not in line of the regular duties of Rutherford as cashier, was out of the ordinary course of business, was not contemplated by the sureties and covered by the bond. (*Moore* v. *M. N. Bank*, 55 N. Y. 41.) The transaction was intended to be an evasion of the provisions of the United States Banking Act, and was in violation of the act. (*Bank* v. *Lanier*, 11 Wall. 369; *Nat. Bank* v. *Stewart*, 107 U. S. 676.) If Rutherford, as cashier of the bank, held the certificate of stock for the bank, then the transfer from the Chase National Bank to George W. Stoddard, one of the directors of the plaintiff, and its president, was made to a person who had notice of the rights of the bank, and who was not a *bona fide* purchaser. (*McNeil* v. *T. N. Bank*, 46 N. Y. 325; *Moore* v. *M. N. Bank*, 55 id . 41, 47.)

*B. R. Champion*, for respondent. The defendants' claim that the transaction, conceding that the bank held the stock as collateral, although held in Rutherford's name, was a device to avoid section 79 of the Banking Act (5201 of the U. S. Revised Statutes), and was, therefore, illegal, is untenable. (*F. N. Bank* v. *Stewart*, 107 U. S. 676; *Nat. Bank* v. *Whitney*, 103 id. 443; *Fortier* v. *N. O. Bank*, 112 U. S. 439; *U. G. M. Co.* v. *R. M. N. Bank*, 96 id. 640; *Thompson* v. *S. N. N. Bank*, 113 N. Y. 325.) The defendants are liable. They agreed that Rutherford "should honestly and in good faith perform all the duties of cashier, and in all respects conduct honestly and in good faith toward or in respect to said bank, its moneys and securities, and the moneys and securities of any other person or persons, left in any manner with said bank." (*Barrington* v. *Bank of Washington*, 14 S. & R. 165; *R. C. Bank* v. *Elwood*, 21 N. Y. 88; *Bostwick* v. *Van Voorhis*, 91 id. 353; *F. N. Bank* v. *Spinney*, 120 id. 560; 87 Penn. St. 419.) The taking of the judgment by the plaintiff against Terbell and Rutherford is no bar to the present action against Rutherford's sureties. (*Emery* v. *Baltz*, 22 Hun, 434; 94 N. Y. 408; *Stowell* v. *Chamberlain*, 60 id. 272; *Bowen* **v.**

*Mandeville*, 95 id. 237.) Considerable evidence was given by the appellants, from the records of the bank, to show extensions of time to Rutherford to make good the stock appropriated by him. Such extensions did not relieve the sureties, they were without consideration, and the sureties lost nothing by them. (*Bd. Suprs.* v. *Otis*, 62 N. Y. 88; *Clark* v. *Sickles*, 64 id. 231; *A. & P. T. Co.* v. *Barnes*, Id. 385.) The appellants objected on the trial to Terbell's testimony of his transactions with the bank as immaterial and improper. The ruling of the trial judge was correct. (*Bd. Suprs.* v. *Bristow*, 99 N. Y. 316.)

Vann, J. The appellants claim that the transaction whereby the stock in question was transferred to Rutherford was in violation of the National Banking Act, which provides that no banking association " shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith." (U. S. R. S. § 5201.) Assuming this to be true the defendants cannot take advantage of it, because the act " imposes no penalty, either upon the bank or borrower, if a loan upon such security be made." (*National Bank of Xenia* v. *Stewart*, 107 U. S. 676.) The case cited was an action by the personal representatives of a borrower to recover from a national bank the value of certain shares of its capital stock delivered to it as collateral at the time the loan was made and, after default in payment of the note, sold by the bank and applied on the debt. The court held that if the prohibition of the statute could be urged against the validity of the transaction by anyone except the government, it could only be done before the contract was executed and while the security was still subsisting in the hands of the bank.

The decisions of the federal courts, construing the provision of said act which prohibits national banks from purchasing, holding or conveying real estate, except for certain purposes, are analogous, because no penalty is provided for a violation

of that section (U. S. R. S. § 5137). While it permits banks to purchase and hold such real estate " as shall be mortgaged to it in good faith by way of security for debts previously contracted," it prohibits the taking of a mortgage to secure future advances, but does not declare void any security taken in violation of the act. It has been repeatedly held that a mortgage, although taken to secure future advances, is a valid and enforcible security, notwithstanding the prohibition and that only the federal government can take advantage of the violation of the statute. (*National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney*, 103 id. 99; *Fostier* v. *New Orleans National Bank*, 112 id. 439.)

In *Wyman* v. *Citizens' National Bank* (29 Fed. Rep. 734), it was held that a contract was not void, if entered into by a national bank in violation of section 5200, which provides that " the total liabilities" to such a bank of any person, corporation or firm, shall not exceed one-tenth of its capital stock, actually paid in. The court said that " the decisions of the United States Supreme Court, heretofore made, warrant the conclusion that objections of the character presented to a breach of the banking law by a national bank can only be urged by the government."

Similar decisions have been made by this court under somewhat similar circumstances. (*Thompson* v. *St. Nicholas National Bank*, 113 N. Y. 325, 334; *Atlantic State Bank* v. *Savery*, 82 id. 291.)

The principle on which these cases rest applies to the point under consideration and requires us to hold that even if the transaction with Rutherford was a mere evasion, and hence a violation of, the provisions of the National Banking Act, the fact is not available as a defense to this action.

The claim of the defendants that Rutherford held the stock to secure him for indorsing the note in question is not supported either by the findings or the evidence. The transaction was not with Rutherford as an individual, but as cashier of the bank. No evidence was given upon the subject except by Mr. Terbell who testified : " When I go to the bank and a

man comes to the hole and I tell him anything, I consider I am saying it to the bank. This conversation was over the counter in the Walden bank. * * * I so transferred it (the stock) to him individually to secure the bank. I did not make it directly to the bank because I supposed he was the bank. He indorsed these two notes * * * when I wanted him to pin the stock on these notes he said : ' When the government official comes here, we can't take our own stock, and when he comes here and sees this stock pinned on these notes, he will say : ' You sell it right off and pay this.' ' I will indorse them and will tell the board how it is.' The object was to get rid of the provision forbidding banks to take their own stock, and so I made the stock to him. He indorsed the paper to get around that. * * * When Rutherford took this stock away he put it in an envelope and I think told Mr. Scofield, then president of the bank, if anything happened, that belonged to me." Thus it is clear that Rutherford, as cashier, took and held the stock in trust for the bank and indorsed the notes simply to deceive the government. He had no personal inter- est in the matter. All that he did was for the benefit of the bank in the transaction of its business, as its officer. His object was to get security for the bank, which was in the line of his duty. The method adopted by him to effect his object was the transfer of the stock, not to the bank directly, as that was deemed inadvisable, but to himself still acting as cashier, for the benefit of the bank. His indorsement, although a contract in form, was no contract in reality, unless made so by subsequent adjudication, but an artifice resorted to by him, while doing the business of the bank, to deceive the official inspector, for its protection. In no part of the transaction did he act for himself. The plaintiff, therefore, became the equitable owner of the stock, subject to the right of Mr. Terbell to redeem. When Rutherford appropriated the stock to his own use, he deprived the bank of that which belonged to it as the beneficial owner, and which was in his name, and the evidence thereof in his custody, by virtue of his official relation to the bank. Although he may not have been guilty, under the cir-

cumstances, of strict conversion, he was guilty of misappropriating the property of the bank that had been entrusted to him as its cashier. This was in violation of his duty to the plaintiff and of the bond given by the defendants in his behalf.

The defendants further claim that even if Rutherford held the stock for the benefit of the bank and in his capacity as cashier, still by recovering judgment against him as indorser, the plaintiff waived its right to sue him in tort and thereby deprived the defendants of a substantial right in case they should pay the bond.

. Although Rutherford, upon the facts herein as found by the Special Term, had a perfect defense to the action brought against him on the notes, still the judgment entered by default was an adjudication irrevocably establishing a contract of indorsement between him and the plaintiff. (*Lorillard* v. *Clyde*, 122 N. Y. 41; *Brown* v. *Mayor, etc.*, 66 id. 385; *Newton* v. *Hook*, 48 id. 676; *Gates* v. *Preston*, 41 id. 113.) If this was a waiver by the bank of its right to sue him for misappropriating its property, it was also a waiver of its right to sue his sureties for the damages caused by such misappropriation. (*Pitts* v. *Congdon*, 2 N. Y. 352; *Chester* v. *Bank of Kingston*, 16 id. 336; *Bank of Albion* v. *Burns*, 46 id. 170; *Barnes* v. *Mott*, 64 id. 397; *Ludlow* v. *Simond*, 2 Cai. Cas. 1; *Colemard* v. *Lamb*, 15 Wend. 329; *Stevens* v. *Cooper*, 1 Johns. Ch. 425; Harris on Subrogation, § 17.)

. It must be assumed on the facts found that the plaintiff had two causes of action against Rutherford, one on the note and the other for misappropriating the security collateral to the note. If they were concurrent, the defendants cannot complain, as both could be prosecuted until one or the other was satisfied. If they were necessarily inconsistent so that a judgment on one was a defense to the other, their liability on the bond ceased when the judgment was entered.

We think that the remedies were concurrent and not inconsistent. By indorsing the notes, not formally but, as it must now be assumed, with the intention of binding himself, Ruther-

ford became liable to the plaintiff on his contract. Subsequently by misappropriating the security that he had taken and was holding as cashier for the plaintiff's benefit, he violated his fiduciary relation to the bank and made himself liable in tort. The latter cause of action accrued nearly five years after the former, to which it had only an accidental relation. His liability on the notes did not prevent him from wrongfully disposing of the bank's collateral and making himself liable on that account also. The casual circumstance that one payment would discharge both liabilities, does not affect their independent origin and nature, because no fact, essential to liability on the note, was essential to liability for the misappropriation. There was a breach of contract and also a breach of duty in no manner dependent on such contract. Under such circumstances, no election of remedies was required, for both were available. (*Manning* v. *Keenan*, 73 N. Y. 45, 51; *Morgan* v. *Skidmore*, 3 Abb. [N. C.] 92; *Morgan* v. *Powers*, 66 Barb. 45; *White* v. *Whiting*, 8 Daly, 23, 25; 6 Am. & Eng. Encyc. of Law, p. 248.)

It may be that the error of the learned trial judge in his legal conclusion that Rutherford was not liable as indorser, affected his finding of the fact that Rutherford held the stock as cashier for the benefit of the bank. We find no exception to the facts as found that is specific enough to raise this point. While said conclusion of law was wrong, it did not constitute reversible error, because the final result reached in the judgment ordered was right.

We think that the judgment should be affirmed, with costs.

All concur, except BROWN, J., not voting.

Judgment affirmed.