JAMES D. HARRIS, Suing for the State Bank of Williamson, of Williamson, N. Y., and in Behalf of Himself and all Other Stockholders, Plaintiff, *v.* HOWARD V. PEARSALL et al., Defendants.

(Supreme Court, Wayne County, August, 1921.)

Corporations — representative stockholder's action for negligence of bank directors — judgment for individual loss not res adjudicata — acquiescence, ratification or election no bar to representative action — damages recoverable.

A stockholder's action may be maintained for the damages occasioned to a bank by its directors for negligently refusing or omitting to prosecute their predecessors in office for losses caused by the latter's negligence.

Estoppel, as *res adjudicata,* by virtue of a judgment for the individual loss of a stockholder on part of his stock, recovered in an action by him in a representative capacity against the directors of a bank for negligent loans, does not apply to a subsequent representative stockholder's action by the same plaintiff against their successors for negligent refusal or omission to prosecute their former directors for the loss occasioned by the latter.

Election will not bar a representative stockholder's action against the directors of a bank for negligence in failing to recover for the bank a general loss, where there is pending an individual action by the same stockholder against the bank itself to recover his individual loss.

Acquiescence or ratification will not bar a subsequent representative stockholder's action against the directors of a bank for negligence in failing to prosecute former directors for making negligent loans where the same plaintiff had previously obtained a personal judgment on 15 shares of stock only, out of 223 shares of stock owned by him, in a representative action against the former directors and has accepted the judgment and his appeal has been dismissed for such acceptance.

The stockholder who has been awarded his individual share for a general loss sustained by a bank through the negligence of directors in a representative stockholder's action on 15 only out of 223 shares of stock owned by him, is an aggrieved stockholder and is entitled to maintain a subsequent representative stockholder's action to recover for the bank the loss sustained by it.

A judgment in a representative stockholder's action for the general loss to a bank due to negligence of directors, which awards, without an amendment of the complaint, a personal judgment in favor of the plaintiff for his individual share of the loss on a part of his stock, is void.

The damages recoverable in a representative stockholder's action against the directors of a bank for negligence of their predecessors whom they neglected to prosecute, causing a loss to the bank, are the amount of the loss which could have been collected from their predecessors on a judgment recovered against them for the loss.

STOCKHOLDER'S action to recover damages for negligence of defendant directors.

Supreme Court, August, 1921. [Vol. 116.

James D. Harris, in person (J. M. E. O'Grady, of counsel), for plaintiff.

Edson W. Hamm, for defendants Engelson, Fish and Platschart.

Clyde W. Knapp (Sutherland.& Dwyer, of counsel), for defendants Pearsall, Carr, Valore and Fuller.

Rodenbeck, J. This is a representative action brought by the plaintiff as a stockholder against the defendants to recover damages for the State Bank of Williamson on account of the negligence of the defendants as directors of the bank. Any recovery in the action belongs to the bank to be distributed according to the laws applicable to the conduct of the bank. The purpose of such an action is to avoid the possibility of delinquent directors escaping responsibility for negligence where the officers in charge of the bank neglect or refuse to prosecute them. It is a wholesome remedy designed to protect depositors and stockholders of a bank and to serve as a check upon the misfeasance, nonfeasance and malfeasance of directors of banks. It holds them to a liability for the failure to exercise that degree of care under the circumstances which would be exercised by an ordinary careful and prudent man. Directors are required at all times according to the conditions as they may arise in the course of the management of a bank to act with honesty, care and prudence and if they neglect to do so they may be held liable for the loss which their conduct causes the bank. This is a sound and salutary rule which holds directors and officers of a bank to the honest and careful performance of the trust reposed in them.

The directors in this action are not the ones who

were directly responsible for the creation of the debts out of which the loss occurred. These worthless debts were created by former directors against whom the plaintiff instituted an action in a representative capacity and in which a recovery has been had, not in a representative capacity however for the bank, but in plaintiff's individual capacity. In the former action there was a finding that the directors in that action had caused a loss to the bank through their negligence of $109,702.72 but the judgment ran to the plaintiff for the benefit of himself and three other stockholders in the sum of $4,496.10 damages and $2,438.97 costs, making a total judgment of $6,935.07. He now claims that the loss of $109,702.72 thus found to have been suffered by the bank has not been recovered by the bank and that the present defendant directors are responsible for the failure of the bank to recover it.

There is no doubt about the negligence of the former directors Waters, Cheetham and Brandt. They made bad loans which aggregated nearly the amount of the capital stock and surplus of the bank. Waters and Brandt were interested in some of these bad loans. The amount of the bad loans aggregating substantially the capital stock and surplus of the bank was enough on its face to charge them with negligence. No bank that is prudently managed can possibly roll up bad loans to that extent. The directors must have been careless to the extent of being negligent in the management of the bank's affairs. They could not and did not escape upon the plea that Transue, a co-director, who also acted as cashier of the bank, had not advised them of the condition of the bank. The law imposed upon them the duty of examination and reports were made by them over their signatures which were not true. A bank examiner

24

had even reported the bank in good condition while the loans complained of were outstanding but that fact did not relieve them from their duty and only served to illustrate that even bank examiners may be negligent in the performance of their important duties.

It was suddenly discovered that the capital stock and surplus of the bank was substantially impaired. The banking department, although its examiner had reported the bank in good condition, then became very busy and were free with their directions as to what should be done. It was suggested that the directors take the bad debts out of the bank and deposit the amount represented by these debts into the treasury of the bank but this course did not appeal to the old directors as it involved an assumption by them personally of the liability which their negligence had created. They preferred to saddle the burden upon the stockholders of the bank and so an assessment of 100 per cent was made upon the stockholders of the bank and this sum was paid into the bank by the stockholders. This payment saved the depositors against loss and was imposed upon all of the stock alike including the so-called "tainted" stock of former director Tufts and former director and cashier Transue. In this respect all of the stock including the so-called "tainted" stock was treated upon an equal footing. When it came to making an assessment upon the stockholders no discrimination was made because a part of the stock was held by delinquent directors or had been transferred by them to innocent purchasers.

After the assessments had been substantially paid in so that the bank was again upon a solvent footing, there was a charge-off on February 25, 1916, of $161,-897.62. This charge-off was made at a time when the

present defendants except the defendants Fuller and Platschart and also two of the former directors, who were responsible for the loss, were directors. The assessment upon the stock and a charge-off of so large an amount naturally excited criticism and suggested investigation among the stockholders and efforts were accordingly made to place the responsibility for the condition of the bank and the imposition of the assessment upon the stockholders. The superintendent of banks was appealed to and the plaintiff made efforts to ascertain the condition of the bank. He was the owner of 15 shares of stock and had purchased other shares from the Tufts estate and from the former director and cashier Transue, until he was the owner of 223 shares upon all of which the assessment was paid amounting to $22,300. As such stockholder he had a substantial interest to protect and a natural desire to make those responsible for the loss refund to the bank. He is not to be criticised because he desired to recover back from the responsible parties moneys which through no fault of his own he had been obliged to pay into the treasury of the bank. It is no answer to say that he may have been actuated in purchasing the Tufts and Transue stock by a desire to speculate in the depreciated stock of the bank. He was not responsible for that depreciation and his speculation, if any, was entirely lawful and is not to be charged up against him in his efforts to recover directly for the bank in which he might benefit, the loss occasioned to the bank.

The advisability of instituting an action as the only means of recoupment presented itself and the plaintiff sought to obtain information from the books of the bank which would enable him to determine whether or not there was ground for such an action. From the time that this purpose became manifest

every effort was made by the directors then in office which included all of the defendants except the defendant Platschart, who did not become a director until July 13, 1918, and the defendant Fuller, who served from January 9 to May 10, 1917, and has been a director since January 14, 1919, to prevent such an action from being instituted and, after it was instituted, from securing a full recovery to the bank for the loss that had been sustained.

When the plaintiff appealed to the officers of the bank for information, one of whom at that time was a former bank examiner who had been loaned to the bank as a temporary cashier, he was refused the information on the advice of the bank's counsel and this refusal was confirmed by a resolution of the board of directors then in office which included the defendants except the defendants Platschart and Fuller. Instead of throwing the books open to the investigation of any stockholder the directors took the position that no examination of the books would be permitted except upon the order of the court. It may have been in the minds of the directors at that time and of their counsel that it was inadvisable for the condition of the bank to become known but they should have weighed against that view the inferences which would naturally be drawn from such a refusal. A director who may be charged with negligence is hardly in a position where he can refuse to give a stockholder information which may reveal his conduct. Such a refusal would naturally give rise to the inference that there were facts which might charge him with responsibility. It does not satisfy an impartial mind to say that by their refusal the directors were endeavoring to protect the bank against unfavorable action by depositors. The stockholders and depositors all knew at the time that the bank had

charged off $161,897.62 equalling the capital stock of the bank of $100,000 and nearly wiping out its surplus and that an assessment of 100 per cent had already been made. These two facts alone must have created in the minds of the depositors and stockholders the impression that the directors and officers had been negligent in their management of the bank. No harm to the innocent stockholders or depositors could have been done by revealing from the bank's books who were responsible for the condition which made this charge-off and assessment necessary. The refusal of the directors to permit a free and open examination of the books would naturally suggest an action to recover the loss wherein the whole matter could be investigated.

This refusal was followed as might be expected by a demand by the plaintiff upon the directors to institute an action on behalf of the bank to recover for the loss it had sustained. This demand was made on October 30, 1916, when all of the defendants were directors except the defendants Platschart and Fuller. They paid no attention to the demand, following up their refusal of an examination of the books, and the institution of an action against the former directors Waters, Cheetham, Brandt and Rogers with the bank as a nominal party defendant was the result. The action was a representative one commenced by the plaintiff " for himself and on behalf of all other stockholders of the State Bank of Williamson " and demanded that the bank " collect and receive such damages for the benefit of the stockholders of said bank." Even the institution of this action did not impress the directors, the present defendants, excepting the defendant Platschart, with the responsibility that rested upon them of assisting in the endeavor of the plaintiff to recover the money that had been lost

by the bank. At the time of the commencement of the suit, the danger of any hasty action by depositors was over and the defendants, except the defendant Platschart, should have been awake to their responsibility to secure for the bank a recovery of the loss which it had sustained. Their duty to the bank should not have been influenced by any personal relations with the delinquent directors, two of whom were then on the board. If any of them felt that they could not personally assist in such an action, it should have occurred to them that the proper course was to resign from the board of directors and permit others to take their places who could act in the interest of the bank uninfluenced by personal relations with the former directors. Instead of taking this course the board of directors of which the delinquent directors Cheetham and Waters were members, actually adopted a resolution on January 11, 1917, to defend the plaintiff's action and employed counsel for that purpose. The inconsistency of such a course must have appealed to them. The present defendants who were members of the board had not been responsible for the accumulation of bad loans by the former directors and were not actuated by any desire to protect themselves but their duty to the bank should have suggested co-operation rather than opposition to the plaintiff's action. If there was any strength in the argument that the directors were endeavoring to avoid any unnecessary publicity in connection with the condition of the bank, it lost its force completely when the action had been commenced and from that time the directors should have encouraged rather than discouraged the proceeding. It would be quite natural for directors who are responsible for a loss to a bank to refuse to participate in any efforts to recover the loss but it is difficult to understand why directors who were not

responsible for the loss should have hesitated one instant to assist in an action for its recovery, particularly after an assessment had made good the loss and protected the depositors. Whatever their motives may have been it is difficult to construe their action as inspired by a desire to protect the best interests of the bank.

The defendants, however, except the defendant Platschart, went a step farther and actually interposed through the counsel for the bank selected by them, an answer in that action in which a demand was made that the plaintiff's complaint be dismissed. This answer set up substantially the same defenses that were interposed by the former directors Waters, Cheetham and Brandt, and all of the defendants, including the bank, were striving to shape the course of the action so that the plaintiff would receive a proportionate share of the loss on 15 shares of stock which he owned and be defeated on the remaining 208 shares which he had purchased from the Tufts estate and from Transue. The present defendants were in office, excepting the defendant Platschart, and are presumed to have authorized the answer interposed by the bank and to have had knowledge of the defenses interposed by the defendants and to have known that if these defenses were successful the bank would not receive one dollar in payment of the loss that it had sustained. The whole effort both of the bank and of the individual directors seems to have been directed toward defeating the plaintiff except upon fifteen shares of stock with no thought of the loss that this would entail upon the bank.

In order to accomplish the defenses which the answers set up in the former action the idea was conceived of obtaining releases from stockholders other than the plaintiff and thus making it appear that he

was the only one interested in a recovery for the bank and of converting the action into one for a personal recovery for the plaintiff as an individual. These releases or some of them were not only signed by the defendants but were obtained by some of them or through their direction. Instead of endeavoring to collect the loss from the delinquent directors some of the defendants not including the defendant Platschart but including directly the defendants Pearsall, Engelson and Fuller, actually sought to relieve the former defendants Waters, Cheetham, Brandt and Rogers from the liability which rested upon them. These papers released the former directors " from any claim which might be asserted in this or any similar action " and assigned to them " whatever claim or right to participate in the proceeds of this or any similar action " the subscribers had or may have and the subscribers agreed that they would not " intervene in this action or be a party in any similar action " and each subscriber released the bank " from any or all duty or obligation to bring or maintain this or any similar action " against the former directors. Could the defendants who participated in obtaining these releases indicate in any more palpable form their desire to shield the former directors so far as possible and to prevent the bank from recovering the loss that had been sustained by reason of the negligence of the former directors?

The form of the prior action as has been stated heretofore was a representative one and by reason of the acts of the defendants, a judgment was rendered on December 31, 1918, for $6,935.07, although the court found that a loss had been sustained by the bank as a result of the negligence of the former directors Waters, Cheetham and Brandt in the sum of $109,-702.72, not one penny of which has been paid into the

treasury of the bank. The plaintiff owned 223 shares of stock but was debarred from a recovery on 208 shares on the ground that it was "tainted" stock while the negligent directors were only required to pay the sum of $6,935.07 out of a total loss of $109,-702.72. The complaint was dismissed as to the defendant Rogers. It is useless to argue that this judgment was a representative judgment because it provided that the plaintiff was to pay out of the amount of the judgment the sum belonging to three other stockholders who had not signed releases but who were brought into the litigation when the court concluded that a personal judgment could be rendered in favor of the non-releasing stockholders. The only judgment that would have been representative in character would have been a judgment for the total amount of the loss in favor of the plaintiff in his representative capacity which sum would have belonged to the bank and would have been required to be paid over to the bank to be distributed as the proper officers of the bank might lawfully direct. It is equally useless to argue that the defendants are not responsible for the form of this judgment. If they through their counsel acting in co-operation with the former directors had not interposed the releases, there would have been no basis upon which the judgment rendered could have been predicated. The court would have been required without these releases to render a judgment to the plaintiff for the full amount of the loss sustained by the bank. It is apparent, therefore, that the defendants by obtaining and interposing these releases in the former action have made possible the form of judgment rendered in that action. It can not be said that all of this was done by the defendants to protect the bank against some ill-advised action by depositors. All that danger had

passed by the time the former action was being tried and there is only one construction that can reasonably be put upon their conduct and that is that it was designed to save the old directors harmless from the payment into the bank's treasury of the loss which had been sustained. It might have been very unfortunate for the former directors to be obliged in their old age to use their private fortunes to make good the loss to the bank but as against this unfortunate prospect there stood the positive duty of directors generally in relation to depositors and stockholders to preserve and recover assets of the bank which, if not insisted on, may result in stripping depositors and stockholders of their savings in their old age. If the directors were prompted by humane motives not to strip the old directors of the savings of a lifetime they could have accomplished it and shown their generosity quite as effectively when the loss had been paid into the bank and dividends declared to them. The directors, with the releases and assignments, might have borrowed the money to make up the loss to the bank, paid it into the treasury, declared a dividend and the stockholders who signed the releases could then have turned over their respective dividends to the delinquent directors.

The plaintiff took an appeal from the judgment of the Special Term and presented a resolution at a stockholders meeting asking that the board of direcstockholders' meeting asking that the board of directors be instructed to take the necessary steps to prosecute the appeal, whereupon counsel for three of the present defendants representing that the board of directors was the only body having authority in the matter, secured a reference of the resolution to that body. The defendants thereupon took no action in the matter and the plaintiff was compelled to prosecute his appeal alone although it appeared from the

decision of the Special Term that the former directors through their negligence had caused a loss to the bank of $109,702.72.

The plaintiff, however, collected the judgment on 15 out of 223 shares of stock owned by him, paid to one of the stockholders brought into the action subseqent to its commencement the amount coming to her and when the appeal was heard it was dismissed on the ground that he had accepted the benefits of the judgment. *Harris* v. *Rogers,* 190 App. Div. 208. While the appeal was dismissed as to the defendants Waters, Cheetham and Brandt, the rule upon which the dismissal was based was not applied to the defendant Rogers, but the Appellate Division examined the case upon the merits as to the defendant Rogers. The plaintiff contended that if the rule upon which the dismissal was based was a sound one to apply under the circumstances, the same rule should have been applied to the defendant Rogers and that the appeal either should have been dismissed as to all of the defendants or it should have been heard upon the merits as to all of them. A motion to amend the decision and for leave to appeal to the Court of Appeals was subsequently denied. *Harris* v. *Rogers,* 190 App. Div. 965.

Then came this action against the directors elected on January 11, 1916, and the defendants Fuller and Platschart subsequently elected, which is a representative action like the action against the former directors and charges the defendants with negligence in their management of the bank and their failure to recover the loss occasioned by the negligence of the former directors. In this action the State Bank of Williamson was served but unlike its position in the former action, it has not appeared. The action is not based directly upon the negligence of the former directors

but upon that of the defendants. The complaint alleges the general duty of the defendants with respect to the bank " to proceed and act with due and proper diligence and care in its affairs and to protect and increase its assets and property in every proper and lawful manner, and to collect and enforce the collection of all debts due and demands due said bank in a diligent manner." It further alleges that the defendants " have failed and neglected and wilfully refused to perform and fulfill their and each of their said obligations as such directors, to the said State Bank of Williamson, of Williamson, N. Y., to enforce and collect said amount so found due to the said State Bank of Williamson," and that each of them " used every endeavor and effort to prevent any recovery upon such claim and every part thereof, and to that end and for the purpose of preventing such recovery interposed the answer in the action hereinbefore referred to and employed and paid from the funds of said bank an attorney who hindered and prevented a recovery, and instructed the officers and employees of the said bank to refuse the plaintiff any information from the books, records and papers of the bank to establish such liability without an order of court, and with the attorney for the bank for the purpose of preventing and hindering a full recovery in said action presented to and solicited and obtained from stockholders of said bank, written releases and waivers and assignments for the purpose and to the end that a full recovery could not be had in such action." These references to the complaint are made to answer the claim of the defendants that the complaint is based upon the judgment in the former action and not generally upon the negligence of the defendants in connection with the prosecution of the claim against the former directors.

Substantially the same defenses based upon the releases and assignments which were interposed in the former action are set up in this action except that the bank has not joined in the defenses interposed. The bank stands mute on this trial. The defendants not only rely upon the releases obtained in connection with the former action but they have obtained new releases in substantially the same terms applicable to the present defendants. In other words whatever the outcome of this action, the directors in this action, as in the former action, are to suffer no loss except as to stock which has not released since the stockholders with the exception of the plaintiff and another have released their claims and assigned them to the defendants. The same plea is made in this action that was made in the former action that if the plaintiff is found to be entitled to recover he shall be awarded only personal indemnity for the loss which he has sustained.

There is only one reasonable conclusion from the conduct of the defendants in connection with the loss sustained by the bank. The former directors had a duty to discharge with reference to the making of loans and they were held liable for negligence in connection with the making of loans whereby the capital and surplus of the bank were substantially impaired. The present defendants who succeeded them had a duty to discharge with reference to the enforcement of the liability of the former directors and their negligence in the performance of that duty is quite as apparent as was that of the former directors in connection with the making of the loans. It is not the negligence of the former directors for which the present defendants are liable but for their own negligence in connection with the non-prosecution of the former directors. The only suggestion of prosecution

that appears to have been made by the defendants was that the former cashier and director Transue should be indicted for making a false report to the banking department but no suggestion was made that the former directors who signed these reports should also be indicted with him. All through the proceedings there was an effort by the former directors to protect themselves at the expense of the bank against the payment of the loss which they had occasioned and by the present defendants to shield the former directors and themselves from any liability. Not a single act can be pointed to in the performance of their duty to recover the loss occasioned by the former directors but on the contrary their whole conduct was designed to defeat a recovery. No prudent and careful man would have conducted his own business as these defendants conducted the affairs of this bank. An ordinary prudent director uninfluenced except to serve the interests of the bank would not have hesitated a moment to insist upon the payment by the former directors of the loss which they had occasioned to the bank especially in view of the fact that the stockholders by an assessment of one hundred per cent had been obliged to make good that loss. A bank cannot be operated like a close corporation. It is not necessary to say that the stockholders with the exception of the plaintiff and three others were satisfied to have this matter adjusted and forgotten. It is enough that there was one stockholder who demanded that his rights be observed and that the usual rules applicable to the situation be applied. The state banking department became very active after the negligence of its examiner in making the report and the impaired condition of the bank became revealed. Whatever advice the banking department gave to the directors cannot be construed as exonerating them from the performance of their

plain and obvious duty to endeavor to recover the loss which the bank had sustained. The reports made by the bank examiner as to the condition of the bank and any advice that he may have given was not regarded as an exoneration of Waters, Cheetham and Brandt in the former action and such advice should not be so considered in this action where the defendants were confronted with a palpable and overwhelming loss to the bank of all of its capital and nearly all of its surplus. Such a condition leaves no room in an impartial mind for discretion as to the course to be pursued. The line of duty is plain and unmistakable. The bank at all times was under the control of its board of directors and at no time was its relation to the banking department such that the defendants can claim that they were bound to follow the directions of the superintendent. The bank examiner, Kinney, was acting merely as a cashier during the time that he obtained a leave of absence and no significance is to be attached to the fact that he had been employed as a bank examiner and subsequently returned to that employment. He was not placed in charge of the bank by the superintendent and what he may have said to the board of directors had no more force than advice which they may have received from other reliable sources. The directors received advice from the bank's counsel but this advice does not relieve them. These matters may all be taken into consideration in determining whether they acted with ordinary care and prudence under the circumstances but they do not alone justify their conduct. Their motives in endeavoring to relieve the former directors and themselves may have been of the very best, but negligence can not be excused because of good intentions. These directors had before them a definite loss consummated in a charge-off amounting to $161,897.62, and no amount of advice can relieve

them from the duty which would be obvious to any
reasonable man that they were required to endeavor
to recover this loss for the bank. Where the course
of action under particular circumstances is a doubtful
one, advice received with reference to it from counsel
or the banking department, may be sufficient to show
reasonable care but no such advice can exonerate
directors where they are confronted with such a clear
course of action as existed in this case for so substan-
tial a loss as to make necessary a one hundred per cent
assessment. The situation is such that the directors
cannot hide behind the advice of counsel or that of the
banking department on the plea of having acted in
good faith. There is no angle from which these facts
can be viewed which will excuse the conduct of the
defendants and exonerate them from the charge of
negligence.

But it is claimed by the defendants that the plaintiff
is not in a position to enforce the liability of the
directors in this action. It is insisted that both by
operation of law and by his own acts he is in a situa-
tion where he is bound by the judgment recovered
against the former directors. The equitable princi-
ples which are invoked by the defendants under the
former judgment whether denominated as a " bar "
or " *res judicata*," fall under the principle of estoppel
which includes cases where a former judgment is a
complete determination of the issues between the par-
ties, where it is conclusive as to some of the issues and
where it embraces issues which ought to have been
determined.

The difficulty however with applying the doctrine of
estoppel as *res judicata* is that neither the parties nor
the issues are the same in this action as in the former
action. *Landon* v. *Townshend,* 112 N. Y. 93; *Collins* v.
*Hydorn,* 135 id. 320; *Furlong* v. *Banta,* 80 Hun, 248;

*Gerstein* v. *Fisher,* 12 Misc. Rep. 211. None of the present defendants, except the bank against which no judgment was asked, were parties to the former action and therefore they are not bound by that action and if they are not bound, the plaintiff is not bound. The cause of action in the former suit was the negligent making of loans while in this action it is the negligent non-enforcement of the liability of the former directors for making such loans. If the judgment in the former action is to be accepted as a valid one, the further objection to the application of estoppel is that that judgment was a personal judgment while the plaintiff in this action sues in a representative capacity to recover for the bank. The former action when commenced, it is true, was a representative one, but the plaintiff was given a personal judgment with a power of distribution of a part of the judgment to three other stockholders. He asked for a judgment in favor of the bank and obtained one in favor of himself and three other stockholders. Now, that judgment is urged by the defendants as an estoppel to this action which is a representative one. The different directors cannot acquiesce in the personal judgment in plaintiff's favor in the former action and also urge that judgment as an estoppel upon a judgment in a representative character, the judgments being based upon a different cause of action. If the judgment in the former action was intended as a representative judgment it was clearly erroneous as it made an allowance to the bank only for a small fraction of the loss found to have been sustained by it. It is also obvious that the evidence submitted in the former action would not have been sufficient to hold the present defendants, which is one of the tests usually applied where estoppel under the head of *res judicata* is invoked.

The claim as to the estoppel of the plaintiff by his

own acts involves the question of election, and acquiescence in and ratification of the judgment. The doctrine of election urged in this case is based upon another action which the plaintiff brought against the Bank of Williamson to recover for the damages that he sustained by reason of the bank's failure to prosecute the former directors. It is claimed that that action is inconsistent with the present action. Under the doctrine of election no such inconsistency exists. One action is against the bank and the other is against the directors. One is to recover a personal loss sustained and the other is to recover as a stockholder the loss sustained by the bank. In one the bank is the real defendant while in the other, the bank should have been the plaintiff and is only a nominal defendant. The plaintiff, however, could not have satisfaction in both cases and a recovery in one of them would bar a recovery in the other assuming that he had a cause of action against the bank. The only cause of action probably he ever had, however, was as a stockholder to recover the general loss sustained by the bank. Assuming that both actions are maintainable, which is not conceded, they are not inconsistent remedies under the doctrine of election and the former action could only be treated as a bar upon a complete satisfaction of that action of the damages sustained by the plaintiff. *Walden Nat. Bank* v. *Birch,* 130 N. Y. 221; *Bowen* v. *Mandeville,* 95 id. 237; *Cramer* v. *Brownell,* 166 App. Div. 456; *Clapp* v. *McCabe,* 84 Hun, 379; *Wilson* v. *Ewald,* 61 Misc. Rep. 286; *Heidelbach* v. *National Park Bank,* 87 Hun, 117; *Patterson* v. *Youngs,* 72 Misc. Rep. 91; *Pratt-Hurst & Co., Ltd.,* v. *Tailer,* 53 id. 82.

Nor has there been any such acquiescence in or ratification of the judgment recovered in the action against the former directors as will bar the present

action. The plaintiff, it is true, accepted the amount
of the judgment but he notified the bank that he held
the proceeds as trustee until the final determination
of the appeal and the appeal raised the question as to
his right to recover on the remainder of his stock.
The acceptance of the benefits of the judgment are not
an acquiescence therein unless there is an inconsist-
ency between such act and the appeal so that the
appeal becomes academic. In this instance the appeal
was not treated as academic as to the defendant
Rogers, who had not appealed, for as to him, although
he with Waters, Cheetham and Brandt had moved to
dismiss the appeal, the judgment of dismissal of the
Special Term was affirmed upon the merits while as to
the other defendants the appeal was dismissed on the
ground that the plaintiff had accepted the benefits of
the judgment. *Harris* v. *Rogers,* 190 App. Div. 208,
965. There is no rule that where the plaintiff accepts
an award made to him by a judgment he cannot appeal
to recover claims rejected. *Goepel* v. *Kurtz Action
Co.,* 216 N. Y. 343; *Met. Trust Co.* v. *Long Acre E. L.
& P. Co.,* 223 id. 69. But the defendants misappre-
hend the effect of the acceptance of the judgment. Its
effect may be to deprive the plaintiff of the right to
appeal as to the award made to him, but unless it is a
full satisfaction it does not bar a further action
against other parties. Assuming that the plaintiff was
barred from prosecuting his appeal he would still
have the right as a stockholder to institute an action
against the defendants, not parties to the prior action,
for their negligence until the question of the damages
sustained by the bank had been fully disposed of or if
the former judgment is a proper exercise of equitable
powers, until he had obtained full satisfaction. There
is no rule of law in actions for negligence that where
the plaintiff accepts a judgment unless it is in full

satisfaction, he cannot sue other parties unless he has obtained complete satisfaction. Even if the former judgment were conclusive as to the defendants in that action, it would not have that force as to other parties who might subsequently become liable. The principle applicable is akin to that applied to successive actions against joint tort feasors until a full satisfaction has been obtained. *Gilbert* v. *Finch*, 72 App. Div. 38; 173 N. Y. 455. There was therefore nothing in the conduct of the plaintiff in accepting the sum allowed in the judgment in the former action which amounted to an acquiescence or ratification to the extent of estopping him from instituting a further action against other parties responsible for the loss occasioned to the bank so long as no complete recovery has been had for the loss sustained by the bank.

The effect of the former judgment is also invoked under the plea that the plaintiff is not an aggrieved stockholder so as to entitle him to maintain a representative action. Under this plea it is urged that the plaintiff, all issues having been determined, has recovered all that he is entitled to in the former action and, therefore, has no standing to institute this action on behalf of the bank. This specious argument proceeds upon the assumption that the former action works as an estoppel upon this action. It does not have that effect as above stated since it is not between the same parties. So far as this action is concerned the parties stand in the same position as if no prior action had been brought. A personal recovery by a stockholder does not bar him from instituting an action on behalf of the corporation on the same stock upon which his personal recovery was had and *a fortiori* where he has other stock upon which no relief was given. The grievance of the stockholder as an individual and as a stockholder are two distinct things and in the former

case the action, if for damages, is one at law triable by a jury and in the latter, one in equity in which the issues are triable by the court. In personal actions it may be that the source of the plaintiff's stock may be more carefully inquired into but in a representative action it is sufficient if his purchase was made in good faith and he is a stockholder of record. The liability of the former owner of the stock for negligence does not estop the present owner from pursuing any remedy to which he is entitled even when the stock is purchased subsequent to the commission of the acts complained of and for the express purpose of instituting an action. *Pollitz* v. *Wabash R. R. Co.,* 150 App. Div. 715; *Pollitz* v. *Gould,* 202 N. Y. 11, 16. Parties who deal in certificates of stock have long been protected by the law upon principles analogous to those that apply to commercial paper. *Union Trust Co.* v. *Oliver,* 214 N. Y. 517, 523; *McNeil* v. *Tenth Nat. Bank,* 46 id. 325, 331; *Holbrook* v. *N. J. Zinc Co.,* 57 id. 616, 631. Where stock is purchased in good faith, it does not carry with it any taint due to any negligence on the part of a former owner of the stock who may have been guilty of negligence causing a loss to the bank. If negligent directors are compelled to make good the loss to the bank occasioned by their acts, all of the stock shares in any benefits resulting therefrom. No distinction in this respect can be drawn between stock owned by the negligent directors or other directors. Each of the negligent directors is liable for the entire loss and if he wishes to protect himself he must see that other directors liable with him are brought into the case. In the former action the defendants might have brought in Tufts and Transue and not having done so they are not now in a position nor are these defendants in a position to claim that the plaintiff as a purchaser in good faith

of the Tufts and Transue stock is not entitled to share in any benefits on the strength of his ownership of that stock resulting from the payment of the loss to the bank. Where all of the parties who are liable for the loss to a bank are before the court and a judgment is recovered against them and the amount is paid into the bank, the negligent acts are purged and the bank is in the same situation as if such acts had never occurred but such payment without bringing in all of the parties liable does not prevent the outstanding stock from sharing *pro rata* in any benefits resulting from such payment. The plaintiff, therefore, had such an interest as a stockholder in the bank as enabled him to maintain this action and his right to share *pro rata* in the benefits of any payment made into the bank according to the amount of his holdings may well be left to be determined until a distribution by way of dividends is made by the bank.

But the effect of the former judgment and the acts of the plaintiff would operate only under a judgment which is a valid one. In this case the former judgment is not only invalid but void. It is not merely an erroneous judgment but one without jurisdiction. Black Judg. § 185, p. 271. There are certain general principles applicable to procedure that are fundamental and, if not observed, vitiate a judgment *in toto*. Any procedure which does not recognize these principles violates substantial rights and fundamental law. These principles are that (1) the court must have jurisdiction of the subject matter (*Scott* v. *McNeal,* 154 U. S. 34, 46); (2) the parties must have a reasonable legal notice with a reasonable opportunity to be heard (*Pennoyer* v. *Neff,* 95 U. S. 714; *Roller* v. *Holly,* 176 id. 398; *Windsor* v. *McVeigh,* 93 id. 274); and (3) the judgment must be confined to the issues presented by the parties (*Reynolds* v. *Stockton,* 140 U. S. 254).

In this instance the court undoubtedly had jurisdiction of the action which was a representative one as framed by the complaint but no such action as the judgment is based on is recognized in law. The plaintiff had no standing at law but only in equity. There is no action known wherein a stockholder can recover his individual damages for a general loss sustained by a bank. While the complaint was representative in its character the judgment gave the plaintiff direct personal relief on fifteen shares of stock out of 223 owned by him. As a representative action the court had jurisdiction if the plaintiff owned a single share of stock. The question as to whether or not any of his stock was " tainted " by acts of former owners was not involved. It is sufficient if he is a stockholder in good faith and when that fact appears, all other inquiries with reference to his stockholdings are outside the record. There is no action known to the law wherein a stockholder may recover his damages for a general loss sustained by a bank according to the amount of " untainted " stock held by him. But if such an action did exist it would be an action at law and not an action in equity and would be triable by a jury. *Kavanaugh* v. *Commonwealth Trust Co.,* 181 N. Y. 121, 123; *McNulty* v. *Mt. Morris El. Light Co.,* 172 id. 410; *Niles* v. *New York Central & H. R. R. R. Co.,* 176 id. 119; *People* v. *Equitable Life Assur. Soc.,* 124 App. Div. 714, 734; *German American Coffee Co.* v. *Diehl,* 86 Misc. Rep. 547. If such an action existed it was beyond the power of the trial court to dispose of it as an equitable cause. The court undoubtedly had jurisdiction of the action as a representative one but its general authority to retain jurisdiction to grant relief did not include the power to convert the action into one at law and try it without a jury. *Lowenstein* v. *Diamond Soda Water Co.,* 94 App. Div. 383; *McCrea*

v. *McClenahan*, 114 id. 70; *Freeman* v. *Miller*, 157 id. 715; *Dudley* v. *Armenia Ins. Co.*, 115 id. 380; *Allerton* v. *Rhineland Machine Wks. Co.*, 165 id. 557; *Reynolds* v. *Stockton*, *supra*; *Jackson* v. *Strong*, 222 N. Y. 149; *People's Bank* v. *Mitchell*, 73 id. 406; *Loeb* v. *Supreme Lodge*, 198 id. 180; *Miller* v. *Crown Perfumery Co.*, 125 App. Div. 881; *Holmes* v. *Camp*, 180 id. 409. " The cause of action belongs to the corporate body and not to the plaintiffs and other stockholders individually, nor to the body of stockholders collectively." *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7, 15. Equity courts undoubtedly have broad powers with respect to the form of their decrees but they are controlled by a " juridical," as Professor Pomeroy calls it, rather than by a " personal conscience." *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 546; *Jacobs* v. *Morange*, 47 id. 57. Equity, therefore, could not change the form of the action from one in equity in a representative capacity to one at law in an individual capacity and grant judgment thereon. *Barnes* v. *Quigley*, 59 N. Y. 265, 268. There is a marked distinction between such a course and refusing specific performance for instance and awarding damages according to the exigencies of the case. An equity court will not retain jurisdiction to award damages except in a case where such a course is necessary to do justice. The rule that the decree may be made to conform to the exigencies of the case has its limitations and does not permit an equity court to disregard legal rules and principles established by the common law. The time has gone by when equitable causes may be determined according to the length of the chancellor's thumb. Courts of equity are controlled by the same rules and principles that govern common law courts. Decisions in equity cannot be made contrary to the law. The familiar rule applies, that

equity follows the law. As Judge Gray said in *Akin* v. *Kellogg,* 119 N. Y. 441: " It does not rise above the common law and the statute. Its office is not to relieve against a hardship, merely as such; nor should its interference be moved by mere opinion in the judge. I do not think the equitable powers of a court can be properly invoked to interfere with the established rules of law; * * *." P. 447. If any relief, therefore, such as was given to the plaintiff in the former action were possible, the issues would be triable by a jury, a jury trial not having been waived, and the case having been disposed of by the court, the exigencies of the case not requiring it, the judgment is void.

It is also fundamental, as already stated, that the judgment must be confined to the issues presented. It must be responsive to the issues tendered by the parties. *Stevens* v. *Mayor, etc., of N. Y.,* 84 N. Y. 296, 304; *Arnold* v. *Angell,* 62 id. 508; *Dalton* v. *Vanderveer,* 8 Misc. Rep. 484. The issue tendered by the plaintiff was his right to recover in a representative capacity and that issue could not be converted without his consent into an action for personal damages. An action in his individual right and one in his representative capacity could not be united in the same complaint. *Brock* v. *Poor,* 216 N. Y. 387. If he failed to make out a cause of action in a representative capacity he was guilty of making a " false clamor." There was no amendment of the complaint and it stands as a complaint in a representative capacity. The judgment was not responsive to the issue. " When we speak of ' jurisdiction of the subject matter ' we do not mean merely cognizance of the general class of actions to which the action in question belongs, but we also mean legal power to pass upon and decide the particular contention which the

judgment assumes to settle.". Black Judg. § 184.
"It is not enough that the parties are properly in
court. That does not give the tribunal power to adju-
dicate any and all matters of difference between
them." Id. "It matters not what the general pow-
ers and jurisdiction of a court may be; if it act with-
out authority in the particular case, its judgments and
orders are mere nullities, not voidable, but simply
void, protecting no one acting under them, and con-
stituting no hindrance to the prosecution of any
right." *People ex rel. Tweed* v. *Liscomb,* 60 N. Y.
559, 568. "Though the court may possess jurisdic-
tion of a cause, of the subject-matter, and of the par-
ties, it is still limited in its modes of procedure, and
in the extent and character of its judgments." *Wind-
sor* v. *McVeigh,* 93 U. S. 274, 282. Where a judgment
transcends the limits of the authority conferred upon
the court by law it is not merely erroneous but abso-
lutely void. Id.

The former action could not be converted from a
representative one triable in equity to one in an indi-
vidual capacity triable at law by any defenses set up
by the defendants. "A defense which a party is per-
mitted to plead in his answer must be the defense of
the cause of action for which the. plaintiff sues, not
to a different cause of action, on which he does not
sue." *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113,
133. The releases and assignments, waivers and dis-
affirmances in the answers are immaterial on the
issue of the plaintiff's right to recover in a repre-
sentative capacity and therefore could not change the
issues. These releases, assignments, waivers and dis-
claimers are all without effect. There is no claim
that the plaintiff has released, assigned, waived or
disclaimed his right to recover on behalf of the bank
against the directors and until that is shown no acts

of the defendants or other stockholders as between themselves can defeat the clear legal right that the plaintiff possesses to recover in a representative capacity. Directors cannot waste the funds of a corporation which they represent, and then relieve themselves from liability by a release granted by themselves or by their co-directors. *Gilbert* v. *Finch,* 72 App. Div. 38, 45. The solvency of a bank at the time of the trial or the individual opinion or sentiment of a majority of the stockholders not to prosecute the delinquent directors is not a defense. *Jacobson* v. *Brooklyn Lumber Co.,* 184 N. Y. 152, 162. If the plaintiff was entitled to recover it was sufficient that he was the owner of stock even though all of the other stockholders were willing to relinquish any claim which they might have against the defendants. These releases and assignments might have some effect after the loss had been made good to the bank and dividends declared but they had no effect on the form of the issues in the former action and the personal judgment rendered to the plaintiff was not responsive to the issues tendered. If the stockholders other than the plaintiff desired to relieve the directors from their liability for any loss occasioned to the bank and to make a gift to the directors of the moneys which they were obliged to pay in satisfaction of the judgment recovered against them, they may do so when the moneys have been paid into the bank and a distribution directed as may be provided by law. They cannot divert the moneys belonging to the bank by any acts in their individual capacity. The money belonging to the corporation as well as its other property and assets can be distributed only upon dissolution or through dividends lawfully declared by the corporation. The stockholders cannot anticipate a distribution of the dividends by any releases, assignments, waivers or disclaimers as was allowed to be

done in the former action. Passing by the effect of the judgment distributing to the plaintiff moneys belonging to the bank which was an interference with the lawful management of the bank (*Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493, 507; *Warner* v. *Morgan*, 81 Misc. Rep. 685, 691), the judgment for the reasons stated was void for want of jurisdiction. It is as if no judgment existed at all and no acquiescence in it or ratification of it can give it life. "* * * no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality." Freem. Judg. (3d ed.) § 117; 23 Cyc. 697.

If the judgment in the former action can be called a representative judgment it is something new in the jurisprudence of this state. It is neither a personal judgment nor a representative judgment but something anomalous without warrant in law. The judgment in the prior action did not have the support of an " equitable result " since if the judgment had been a representative one, all of the stock owned by the plaintiff would have shared in the benefits of the recovery whereas under the judgment he was barred from participating on 208 out of 223 shares because the former owners of the 208 shares were found to be negligent although not parties to the action. An equitable result must mean justice to both sides and that result does not seem clear where the plaintiff is given a personal judgment when he asked for a representative one and is deprived of participation on 208 shares of stock which could not have been accomplished by a representative judgment. It is not an equitable adjustment but a personal adjustment to the advantage of the delinquent directors. If a double participation on fifteen shares is afforded the plain-

tiff by a judgment in a representative capacity in this action, it is not his fault but that of the defendants in the former action and this action who obtained the releases and assignments leading to a personal distribution to the plaintiff of his loss on these fifteen shares under the form of judgment rendered in the former action. There is no rule that Tufts and Transue might not have maintained a stockholder's action even though they were involved in the negligent conduct that resulted in the loss and the plaintiff was not barred even on this stock from maintaining such an action. A guilty director might very well want to right his own wrong and bring his culpable fellow directors to account although such a course might appeal to some as contrary to human nature and general experience. Exact justice can only be done by paying the loss into the treasury of the bank and placing all of the stock in the position in which it was before the loss occurred. There is no sound argument for paying to a complaining minority stockholder his share of the loss instead of paying the total loss into the corporation on the ground that the delinquent directors will benefit by the latter course. They benefit either way. If they do not pay over the whole loss they benefit to the extent of the amount retained and if they pay over the whole loss, they benefit in the appreciation of their stock with that of all other stock. The latter course is the reasonable one since by the payment of the full amount of the loss the corporation is put in the position in which it was before the loss occurred. The form of judgment in *People* v. *Ballard,* 134 N. Y. 269, was not involved in the case. The issues were whether or not the people without a relator could sue and whether or not a domestic corporation could be reorganized under the laws of another state without the process of lawful dissolu-

tion. P. 271. The action was brought under sections 90 and 91 of the General Corporation Law, which permits a judgment for the purposes enumerated " or so much thereof as the case requires." The plaintiff in this or the former action had no right to proceed under these sections.

The defendant directors being negligent and the former judgment and the acts of the plaintiff not being an estoppel to this action, the plaintiff is entitled to recover such damages on behalf of the bank as it has sustained. In estimating these damages the rule in this action is not the same as that which was applicable to the former action. In the former action it was a question as to how much damage had been sustained by the bank by reason of the directors incurring bad loans while in this action it is a question of the loss that the bank has sustained by reason of the failure of the defendants to enforce the liability of the former directors. In the former action the damages were the losses sustained through the negligence of the directors while in this action it is the amount which the bank could probably have collected from the former directors had the defendants proceeded to enforce their liability. The amount of damages depends upon the financial responsibility of the former directors and the amount which might reasonably have been collected under the judgment. In other words, if these defendants had assisted in the prosecution of the former action and a judgment had been recovered against the former directors for $109,-702.72, how much of that amount could probably have been collected from the defendants in that action? The amount of such liability will be fixed in the findings of fact and conclusions of law to be filed in connection with this decision.

Judgment for plaintiff.