SARAH GRAPES UNDERDOWN, Plaintiff, *v.* WALTER H. SMITH, as Executor, etc., of HELEN EMERSON, Deceased, Defendant.

Supreme Court, Orleans County, December 27, 1928.

*Harry Cooper* [*M. J. Whedon* of counsel], for the plaintiff.

*Stedman & Waterman* [*B. J. Stedman* of counsel], for the defendant.

CHURCH, J. The plaintiff alleges that in 1888 her father and mother made a contract with said Helen Emerson whereby the plaintiff (then a child of twelve years of age) should go to live in the family of said Helen Emerson, which consisted of herself and her husband, Charles Emerson, and that the said Helen Emerson then and there promised and agreed that in case the plaintiff remained with her and her husband until said plaintiff was married or until she arrived at the age of twenty-one years, then upon the death of the longest liver of the couple, Helen Emerson or her husband, Charles Emerson, the fourteen acres of land described in the complaint should belong to and be conveyed to the plaintiff.

That the said Charles Emerson died in the year 1900 and the said Helen Emerson died in the year 1928, and that in the year 1904 the premises in question were conveyed by the said Helen Emerson to a stranger to this action.

The said Helen Emerson left a last will and testament which has been duly admitted to probate and by the terms of which a legacy of $500 is left to the plaintiff, but no other or further provision is made for plaintiff in said will, and the plaintiff has been paid nothing on account of her services in the Emerson family although she remained with them until after she was twenty-one years of age and until several years after she was married, and thus fully performed the contract on her part.

The plaintiff has shown by her father, William Grapes, and her mother, Mary Ann Grapes, and by her husband, all of the facts necessary to establish her case.

The defendant Walter H. Smith, who is the executor named in the last will and testament of said Helen Emerson, and duly qualified and acting as such, has offered no evidence herein.

The sole question involved then is whether the evidence submitted on behalf of the plaintiff is of the clear and concise character which the law requires in cases such as this.

We are of the opinion that it is of such a nature, even though given by near relatives of the plaintiff, as to warrant a judgment in her favor.

It would, indeed, be unusual in a case such as this where the services of a child of tender years are turned over to strangers at their request, that parents of the station in life of Mr. and Mrs. Grapes would think or consider having the arrangement reduced to writing. It .would, too, be out of the ordinary to have present at such a family conference, strangers to the transaction who would be able to qualify here as disinterested witnesses.

It was a family affair and this court believes that this little girl was turned over to the Emersons as detailed by her now aged father and mother.

We are impressed with the honesty and apparent sincerity of these two old people. Then, too, they are corroborated not only by the husband but by the witnesses who knew of her being in the family.

The defendant relies in this case upon the decision in the case of *Hamlin* v. *Stevens* (177 N. Y. 39). We have gone over carefully the opinion and the facts in that case and do not believe that the law as laid down there precludes the conclusion which we have reached here.

In that case there was conflicting testimony. In this case there is none. In that case the written statements made in letters by the interested parties, to the mind of the court disproved any idea of a contract and the trial judge held that there was no contract and this holding was sustained by the Court of Appeals.

The general rule laid down in that case we have no quarrel with because it states that " While such contracts are sometimes enforced by the courts, it is only when they have been established by evidence so strong and clear as to leave no doubt, and when the result of enforcing them would not be inequitable or unjust."

In this action too we must take into consideration the statement of the Court of Appeals in *Lomer* v. *Meeker* (25 N. Y. 361) where the court says: " The witness was not impeached or contradicted. His testimony is positive and direct, and not incredible upon its face. It was the duty of the court and jury to give credit to his testimony. The positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by court or jury arbitrarily or capriciously. They are bound to believe, for judicial purposes, such testimony, and it would, in an instance like this, be the clear duty of the court to set aside the verdict of a jury founded upon a disbelief of clear, uncontradicted and undisputed evidence."

Then the Court of Appeals in *McKeon* v. *Van Slyck* (223 N. Y.

392, 398) says: " There is no rule of law that the claimant's contract must be in writing, or even that it must be made out in all substantial particulars by disinterested witnesses. *Hamlin* v. *Stevens* (177 N. Y. 39) is sometimes cited for such a rule, but mistakenly."

Under the contract alleged and proven in this action, the rights of the plaintiff did not accrue until after the death of Helen Emerson which occurred in the spring of 1928 and, therefore, there was no laches in the bringing of this action under the authority of *Matter of Seifried*, 130 N. Y. 229.)

We have gone over carefully all of the rulings of the Court of Appeals and the lower courts which have been brought to our attention and have reached the conclusion that under the circumstances of this particular case and on the evidence submitted here which is uncontradicted, the plaintiff is entitled to a judgment in the amount sought, viz., $2,500.